Good morning, everyone. Welcome to the Friday edition of this week's panel. Judge Brasher and I are pleased to be with you here in person. We have Judge Branch on the telephone. And so, as I've said now, Andrew, Judge Brasher is getting tired of the joke, but the voice of God will be played by Lisa Branch today. She's up there somewhere. So, you've been here before. You understand the drill. We've read your materials, the briefs, the underlying cases, the statutes, the record material. So, don't waste your own time with a lot of factual and procedural history. We know it. Just get to what you think is the key issue that drives the decision in your favor. Also, just be aware of the timing mechanism that we have here. I'm not going to cut you off in the middle of a sentence. As Judge Brasher, we've had a few that go over. But as you see your time winding down, please do be aware of it and begin to summarize your argument. All right. And with that, we'll call the first case, which is 20-12200, Carter v. Commissioner of Internal Revenue. Ms. Horde is here for the petitioner. Mr. Christensen for the respondent. Ms. Horde, you may proceed when you're ready. Good morning and thank you. My name is Vivian Horde and I represent Mr. and Mrs. Carter and Mr. Evans who donated a conservation easement over 500 acres along five miles of a deep navigable river near St. Simons Island, Georgia. National Developers had offered Mr. Carter over $100 million before it had been rezoned and entitled. In fact, Mr. Evans purchased a half interest in the partnership based on the underlying value of the property for $60 million two years before the donation. The deed here reserved 11 two-acre home sites, the locations of which would be approved at a later date by the land trust. Because of that fact, the tax court found, based on Pine Mountain, that the easement didn't meet the restriction in perpetuity requirement under the code. So the government has conceded the restriction on use requirement here based on the Pine Mountain decision, which leaves two issues remaining for the court. Can I ask you just sort of an administration question, I guess. Is there any good reason for us to go beyond the granted in perpetuity issue and decide all these other issues that the tax court didn't, as opposed to just remanding it to the tax court to do its thing? Yes, Your Honor. There is for several reasons. The tax courts, I recognize that this court, particularly you and Judge Branch, are on the Pine Mountain panel, and you all remanded it. But I listened to the oral argument, and in the oral argument, Mr. Woolridge said that they anticipated that it would be sent back on remand, so they didn't fully brief it. We fully briefed it here, and the reason we fully briefed it is, when you read the decision below, the tax court said, because of the allowed use within the building areas would be antithetical to the easement's conservation purposes, the residual restrictions wouldn't meet the restriction on use requirement. So the way we read that, he sort of merged the two tests. In order to have a valid conservation easement, you have to donate the property, and the restriction on the property has to be in perpetuity. But the conservation purposes have to be in perpetuity as well. Here, the government conceded that we had conservation purpose on the property. I mean, the land mass is, you can't even dispute that there were conservation purposes on the initial donation. We had temperate hydric hammock, which is a rare habitat, maritime forest, which is a G2 habitat, southern Atlantic coastal depression ponds, which are also G3 habitats, the West Indian manatee, which is a G2 species. We had all of these things. So even the tax court judge says, we're not disputing conservation purpose on this property, are we? The government said, no, but we're disputing conservation purpose in perpetuity because of the 11 floating home sites. And that's why the judge said it's antithetical.  It's a Friday. So we had to extensively brief that, and the government has extensively briefed that as well. We introduced three expert witnesses on that point. All of them agreed that if you exercised every retained right in the deed, you wouldn't impact all of these natural areas. The land trust would be overseeing it. The government didn't introduce a single witness at trial to dispute the undisputed facts. So here, it has been fully briefed. The record is closed below. And the other issue is the government's argument on restriction on the in perpetuity requirement on the conservation purposes is similar to their in perpetuity on the restriction requirement. They're saying in their brief, the way I read it, is that you have to have conservation purpose on every small piece of land that is there. I mean, I guess the way I think about this, and I either have been enlightened or scarred by my experience in Pine Mountain, but this stuff to me is hard. I mean, this is really hard. And I just wonder if we don't benefit from a vetting of these issues, a full vetting of these issues in the tax court, instead of trying to strike out on our own and do this, no matter how fully and well briefed the issues are before us. You know, typically we say we're not a court of first instance, we're a court of review. And that seems to me maybe doubly true, maybe even triply true here where we've got these difficult issues involving the tax code, some of which are kind of bound up in factual considerations. But, Your Honor, I would like to point out the government's argument is inconsistent with this court's ruling in Champion's Retreat. Because the court has our, Champion's Retreat came out two months after the tax court's decision in this case. And in Champion's Retreat, the issue was conservation purposes on a piece of property that involved the donation of land, and there was a golf course operating on the land. And the issues in Champion's That's all this court reviewed in Champion's Retreat was what are the conservation purposes. And the government's arguments were the same. You can't have conservation purpose on a golf course. You have to reserve the entire amount of the land. And in Champion's Retreat, the court concluded that the relevant inquiry is whether the easement on the entire property improves the chances that the conservation purposes of the donation would be preserved. The government argued the same thing in Champion's Retreat, and the court there found, based on the evidence, contrary to what the tax court had ruled, is that the evidence established that the conservation purposes would be preserved. Applying the Champion's Retreat test here, the relevant question is not whether 11 home sites hamper conservation on those home sites, but rather whether allowing unrestrained development on the entire donated parcel would pose a greater risk to conservation than limiting development to 11 two-acre home sites. Three experts have already said it would not do so. The government has not offered any experts. They haven't offered any witnesses on that point, and the record is closed. So this court has already decided that issue. The issue has been fully briefed in this case, and it can be decided in this case. In the trial below, the government only offered one witness, and it was an appraiser. They didn't really dispute the conservation purposes other than to make the analogous arguments that they made in Pine Mountain, that you have to make a fee simple donation. But this is an easement. We still own the property. We still can use the property as long as we do it under the terms of the conservation easement, and we don't violate those terms under the oversight of the land trust. And the same argument would apply on the baseline document. The baseline document, the purpose of the baseline document is to make sure that we know the condition of the property at the time of the donation. And the land trust is the one who went and looked at the property. They confirmed the condition of property at the time of the donation. They gathered all the maps, all of the, you know, they did inventories of the property. They visited the property three times. They presented all of their information to the land trust before the land trust would accept the donation. In the conservation deed, everybody concurred that this is the condition of the property at the time of the donation. They monitored the property continuously. There's been no evidence from the government that there's even been any alteration in the property. The land trust knows the condition of the property. This is the same argument that the government proffered in the Fifth Circuit opinion of Bosch Canyon, and the Fifth Circuit court didn't buy it. They said there's enough in this record to determine what's at issue here, and there's enough in this record to determine that the baseline requirements have been met. I'd like to point out in the all these ancillary issues be remanded back to the tax court. It wasn't clear why that panel only remanded value back to the tax court. They didn't explain it, but they did remand it back just on value. If you don't have any questions on that, I would like to address the penalty issue, if I might. Okay, section 6751 provides that no penalty shall be assessed unless the initial determination to make the assessment is approved by an immediate supervisor of the individual making the determination. So, I'm a tax lawyer, so I know what an assessment is. Under the regulations, an assessment is just where the IRS puts in their records you owe this tax. It's a bookkeeping entry. It's a bookkeeping entry. So, during an audit, the IRS can't assess a tax. The only people who can assess a tax is an individual by their action or inaction. You either agree to it when you self-assess when you file your return, or you agree to it during the audit, or you fail to file a tax court petition after a statutory notice of deficiency is issued. Then the government, based on the taxpayer's action, can enter an assessment, or they can enter an assessment after a tax court renders an opinion. All an agent in an IRS audit can do is make a proposed assessment, and that's what they did here. They proposed an assessment. That's why the tax court has consistently held that the initial determination occurs when the IRS initially communicates its intention to propose the assessment of the penalties. That's what's happened here. Why wouldn't we? I mean, you make a great point about the definition of assessment. Why wouldn't we just apply the same definition of assessment that we would usually use and say the initial determination of the assessment is when the assessment goes on the books? Well, then that would be too late because then the purposes of the statute wouldn't be prevented. So, if you look at volume 9, document 77, pages 96 through 132, and volume 9, document 77, page 133 and 150, this is what accountants usually receive because accountants usually handle audits, and this is telling you the proposed changes to the return, which is what we're... Why is, I mean, you know, if we're not going to use the normal definition of assessment, we're not going to use the one that would apply, why is that letter the one that matters as opposed to just some other letter or maybe a phone call? I mean, how do we know? This letter is important because this is the point where you're invited to go negotiate what you're going to pay, and at this point someone will say, well, we'll get rid of the penalties if you pay the tax. Most people don't go to a lawyer. Most people don't get a statutory notice of deficiency. The only reason I have this is because they didn't like the results and they waited on a statutory notice of deficiency and went to a tax litigation attorney. The accountant handles the audit. At the time of this letter, the agent had everything. The agent had the appraisal. The agent would have asked for the back chain on title and would have shown that Mr. Evans purchased a half-interest for $30 million, meaning the value of the total was $60 million. They had all the information they needed on value. Supervisory approval needed to happen at this point in order for the statute to be meaningful at all. Well, the statute, let me just ask you one more question on that, if I could get Judge Newsom's indulgence. So it seems to me that the Second Circuit opinion on this suggests that as long as there's supervisory approval before you would go to tax court, that the purposes of the statute are satisfied. No, Your Honor, I don't believe that's what the Second Circuit said in Chai. The Second Circuit said the latest point of an initial determination. So the agent may not determine penalties are due. Maybe the lawyer, when they're filing their answer or amended answer, decides that's when penalties should be applied. That can be an initial determination. They said that's the latest point of initial determination. But they also, if you, in the opinion, I don't have page numbers because mine's a tax service, but it says an unapproved initial determination of the penalty to proceed through administrative proceedings, which is what this is, settlement negotiations and potential tax court proceedings only to be approved sometime prior to assessment would do nothing to stem the abuses Section 6751b1 was meant to prevent. So it's not saying... Is that true though? I mean, because, I mean, you're, that does a better job perhaps at, you know, riding herd on IRS agents and their proposals of penalties. But doesn't it do something for an IRS agent to know that if they're going to propose a penalty and for it to stick at some point, they're going to have to get a supervisor to approve the penalty? I mean, it may not be now, but for it to stick, a supervisor is going to have to approve it. So doesn't that do something as far as preventing an IRS agent from just Well, that's why the supervisor should have gotten approval before he sent this notice to the taxpayers. The notice says it has been determined penalties are due and it invites the taxpayer to pay the tax. Yeah, but I guess my point is, so why does the IRS agent have to get that approval before the letter? Isn't it sufficient? Isn't it a sufficient check on the IRS agent to know that, look, if I'm actually going to be able to get these people to pay these penalties, at some point I'm going to have to get my supervisor to approve this? Well, Your Honor, the letter says if you agree with the proposed changes, send us your check. If you don't, if you agree with the proposed changes, but you can't afford to pay, we'll set up an installment agreement. Pay as soon as possible so that failure to pay penalties don't accrue. It doesn't say it's tentative. It doesn't say we don't have authority to say the penalty has been determined. It doesn't say if you send us your money, we'll send it back if the supervisor doesn't approve the penalty. Okay. Judge Branch, do you have any questions? I do not. Okay, so we'll hear from you again on rebuttal and we'll hear from Mr. Christensen, the Commissioner. Thank you. May it please the Court. On the first issue of remand, a remand is necessary in the aftermath of Pine Mountain. The Commissioner... Aftermath. I like that term, the aftermath. Yes, and the Commissioner... My whole life has been in the aftermath of Pine Mountain. Mine as well, Your Honor. I was on that case. The Commissioner has conceded that the grounds on which the tax court ruled below to disallow the charitable deduction require reversal based on the Pine Mountain decision. However, the Commissioner argued two alternative arguments. First, that the conservation purposes were not protected in perpetuity, and second, that the baseline documentation requirements were not satisfied. Both of those issues involve factual determinations that must be made by the tax court that have never been made. The tax court didn't reach these issues, so although those issues may have been briefed and the record may have closed after a trial below, the tax court never made any factual determinations, and it's the role of the tax court to do that in the first instance. And then, of course, this court would be a court of review to review those factual findings afterward. So a remand is required for both of those issues. If there are no further questions on that point, I would like to move to the issue of penalties. Civil tax penalties serve an important function in encouraging voluntary compliance with the tax laws. In this case, the Commissioner imposed valuation misstatement penalties on the taxpayers after finding that the amount that they claimed as a deduction for the donation of the conservation easement was grossly misstated. The tax court, however, denied and disallowed those penalties on procedural grounds because it held that at the time the penalties were first proposed and communicated to the taxpayer, they had not yet been approved by the supervisor. The tax court's communication-based rule is without textual support in the statute. It improperly relies on the legislative history, and it threatens to undermine the efficacy of the broader penalty scheme that Congress has enacted to deter abusive taxpayer behavior. The text of the statute imposes just two timing requirements. First, the text states that no penalty under this title shall be assessed unless the initial determination is first approved. So, in that language, it's explicit that the supervisor must approve before a penalty may be assessed. Second, implicit in the term approved is that the approval must occur when the supervisor still has meaningful discretion to approve the penalties or to prevent the penalty assessment. The Second Circuit's decision in CHI focused on that latter requirement and determined that because a supervisor loses discretion once the taxpayer responds to a notice of deficiency by filing a petition in the tax court, that the approval needed to occur by the date that the commissioner's position that approval must occur first before the assessment, and second, while the supervisor still has discretion. And when we're dealing with penalties that are subject to the Code's deficiency procedures, like those that are in issue in this case, the supervisor retains that discretion, as the Second Circuit found, up until the time the notice of deficiency is issued. The Second Circuit described that moment as the truly consequential moment of approval, as the IRS's issuance of the notice of deficiency. Thus, we hold that the statute requires written approval of the initial penalty determination no later than that date. Will you help me with something? So, I think you make a good point that the tax court's current interpretation of this statute is not, doesn't really hew very closely to the text of the statute, but does your interpretation, does the Second Circuit's interpretation hew particularly closely to the text of the statute? It seems like it's, it's just, they're just sort of different ways of trying to kind of make a different statute. Does that make sense? Does that question make sense? Yes, it does, Your Honor, and thank you. The Second Circuit's ultimate holding, we think, does hew closely to the statute. Ultimately, the analysis of the Second Circuit and its holding focused on the discretion of the supervisor to approve or to prevent penalties. And so, in order to give meaningful, so first, we have to give effect to the term approved that's in the statute. If, if the supervisor doesn't have to approve the penalty until after the tax court has already heard the case and decided whether penalties should apply, you know, by that time, the supervisor approving or not approving is essentially meaningless, as the Second Circuit found in Chai, because the tax court's determination is going to control. So, in order to give meaningful effect to the term approved, the approval should occur while a supervisor still has discretion, and we think that is the thrust of the decision in Chai. Let me ask you to address this. So, so the text says, no penalty under this title shall be assessed. Your point was that's sort of the first timing rule. Yes. What if that were the only timing rule? So, right, what if it were just, what if we read this statute just to say, look, the timing rule here is that at some point before there's an assessment, the supervisor has to approve? That's, that's a reasonable interpretation. In fact, most of the Code's penalties are not subject to the deficiency procedures, and so it's, it's likely that Congress had in mind a different type of penalties, which are assessable penalties, which, which don't require the IRS to issue a notice of deficiency that then gives the taxpayer the chance to go to tax court. So, there, there, with, with assessable penalties, there aren't, the assessment process is not interrupted, or the supervisor's discretion is not interrupted by intervening judicial proceedings. And so, for those penalties, you know, the supervisor does have discretion up and until the time of, of the assessment, and we think that's, that is probably what Congress had in mind when it centered, you know, in the, in the first language, the first words of the statute, focusing on the assessment. And in fact, the heading of this statute is called approval, you know, it's entitled approval of assessment, and we think that enforces, reinforces the statutory language in the statute itself that likewise focuses on the assessment. If, if we were to adopt that rule, and I'm just, this is just a practical question about what the impact would be. So, you've, you've pointed out that there's kind of a category of assessments where there's no tax court involvement, and it's really easy to see how this would apply there. Well, how, how would that apply in the category of cases where there is tax court involvement? If we were to just say the only timing issue under this statute is that you can't assess it until there's an approval? So, in, in that, in that case, the, the problem that the Second Circuit found was that the supervisor's approval wouldn't be meaningful once the tax court has decided whether the penalty should apply. And, and so, and we would agree with that analysis that in order to give meaningful effect to the, to the approval requirement, that the approval should occur at some point while the supervisor can still make a difference and make a decision. And so, and so let me just, here's, here's a, here's a potential scenario. I just want to get your thoughts on how this, how this could conceivably work. So, let's say I'm the tax, the tax court. I see the statute, and I read it as a directive to me, right? No penalty under this title shall be assessed unless the initial determination of such assessment is personally approved by the immediate supervisor. And so, if I were the tax court, I would say, where's the paperwork where there's a supervisor approving? You would say, we don't have one yet. And if I were the tax court, I would say, well, I'm not going to assess this until you get the supervisor to fill out that paperwork. Could that potentially work? Or just up until the end of whatever tax court proceeding there is, the supervisor can approve? I, I agree that that, that would be workable. And, and because at that point, if the tax court is relying on the supervisor's approval, then, you know, the supervisor still has the ability to prevent the assessment of penalties if the supervisor determines they're inappropriate, at which point the supervisor would not provide that approval to the tax court. And, and the purpose of the statute would be fulfilled, that, that a supervisor has reviewed the penalty assessment and, and agrees with it. Right. So, the supervisor could come into the tax court and say, look, tax court, just so you know, we've got a rogue IRS agent here. I disapprove these penalties. And the tax court would say, okay, well, I'm not going to assess them because the statute says not to assess the penalties. That's right. I agree with that. And that, that would give meaningful effect to the approval requirement. Can, can you also just comment while we're on this topic on, I guess, what I'll call the Holmes Doctrine? Judge Holmes in the tax court has a slightly different take on this and says that maybe 6751 just doesn't apply when we're in tax court land. Right. I think, I think his, his reasoning was consistent with the first decision in, in Grave that, that focused purely on, on the assessment. And as long as, as the approval occurs before the penalty is mechanically assessed, that it would be timely. And that, that's the position that the Second Circuit disagreed with in, in CHI. Of course, again, you know, as long, the commissioner's position is, as long as a supervisor has meaningful discretion to prevent the penalty assessment, that is all that Congress required. Because Congress was concerned that there were some penalties that were being imposed in some cases without ever receiving supervisor approval. And so they addressed that issue in the statute. If we were to adopt, if we were to adopt the rule that, I guess, the Holmes rule or the kind of hypothetical I was suggesting, that messed the IRS up? If we split with the Second Circuit, would, would there be, what would happen if we, if we did that as a practical matter? Like, for a lot of years, the, the IRS practice was to, you know, secure approval at some point. But the, the commissioner interpreted this statute as only imposing a requirement that, that the approval be obtained before the, the mechanical act of assessment. So that, you know, that was the rule that the IRS operated under for, for a lot of years until the Second Circuit's decision in, in Grave, or in CHI came. And, and the IRS has, has been, you know, responding to that decision and, and trying to change its internal procedures so as not to forfeit appropriate penalties when they ought to be imposed. But. Well, so, so maybe, maybe, I don't know whether this is Judge Brasher's question, but now it's my question. If you have the Second Circuit saying A and us saying B, how does the IRS manage that divergence going forward? Likely. I mean, likely the IRS position is that as long, you know, as long, the procedure would be to secure written approval from the supervisor before the notice of deficiency is issued. And that would satisfy, you know, both rules. Right. So I, okay, so that makes sense. So just to play that out, your point is, if, if the, if the Second Circuit or some other circuit has a more restrictive read of it, you would still make an effort to satisfy that restrictive read if we took a more IRS friendly, I guess, read of it. By satisfying the restrictive, you would necessarily satisfy whatever we put down. Yes. Yes. And the IRS is, you know, even with the tax court rulings, the IRS is trying to avoid forfeiting proper penalties and trying to get approval even earlier. But what, all the while challenging the tax court's rule in, in the courts. Okay. Because we disagree with that position. Judge Branch, do you have any questions for the government? I do not. Okay. Very well. Thank you so much. I suspect we'll replay some of this in a few minutes. All right. Ms. Hoard, let's hear from you on rebuttal. Yes, gentlemen. One thing I might need to So, if this circuit splits with the Eleventh Circuit, then the, the auditor has to apply different rules depending on which circuit the taxpayer resides in. And, and Judge Brasher, with all due respect, I, I wanted to point out that if the court adopts a rule that anytime before the tax court renders its opinion, not everyone who goes through an audit goes to tax court. Most people settle. Most people work on audits with their accountants and they settle. And there's nothing in the congressional intent that says we only meant to protect people who have the means to litigate in tax court. Well, what do you, I mean, I, I get your point. And, and I would understand certainly if Congress were concerned about this, could write a statute that was directed to the problem that you're identifying. But this says no penalty under this title shall be assessed unless. So, I guess my problem is that the prohibition I see in this statute is the assessment of a penalty unless. So, if you don't, I mean, if, if you're just, if you're settled, then you've settled, right? There's no assessment of a penalty. I mean, the assessment of the penalty comes, comes separately than that. I mean, explain that to me. Who is assessing a penalty? If, if, if the only timing issue here is the assessment of a penalty, then what, what needs to happen? In this letter, the taxpayers are told it's been determined a penalty is. And my point is, if you had gotten that letter, settled, then what's wrong? What happened? That was problematic. You paid the tax before a supervisor had approved. Yeah, but has the IRS assessed a penalty under this title? Yes, if you pay this tax, then there will be, if you sign this, then the IRS will enter an assessment that says you owe the penalties and the tax determined in this letter. But that letter itself, you don't, you don't contend that that letter is an assessment, do you? It is a proposed assessment. All the, all the agent can do is propose an assessment. They can't assess the tax. So to Judge Brasher's question, the assessment, I mean, as best I can tell in this case, the assessment still hasn't occurred. No, the assessment hasn't occurred, but the initial determination to propose assessment had. Okay, so, but, but I mean, the, the what in this title shall be assessed, right? Has that assessment occurred? No, nor has. So at any point, right, we could have supervisory approval and the statute is satisfied. But the supervisory approval has to come before. An assessment, that's what the statute says. Before an initial determination is communicated to the taxpayer. No, that's what the initial determination is, what the supervisor has to approve, right? That's the, the, the supervisor has to approve the initial determination of such assessment, such assessment referring back to what's being assessed, right? Well, I think Judge Holmes indicated in an earlier grade decision that we don't follow any longer, that an interpretation, the way this court is, viewing it might force us to have bifurcated trials where we determine the deficiency first and then have a penalty determination in a bifurcated trial. That was, I remember that was one suggestion. Yeah, I guess answer this just as a matter of sort of linguistics, I guess, like if I tell, if I tell my kid, you know, you can't go to school unless I approve the, your, your clothing choice for going to school. I, I mean, I can approve that clothing choice, like up until the moment my kid leaves, right? I mean, the, the key timing there is when they go to school, not when they put on their clothes in the morning. Does that, does that hypothetical make sense? Yes, Your Honor, but your reading of the statute would allow the supervisor to approve it after the tax court renders a decision because the assessment isn't entered until that time. Well, the tax court, I mean, I don't, I don't know whether this would work or not. I guess that's why I ask it hypothetically of the government. I mean, couldn't this be addressed in the tax court proceeding where the tax court says, hey, IRS, you want me to approve these penalties? I'm not going to do that because you don't have a supervisor's approval of the determination of the penalties. So, you know, bring in a supervisor. Let's see if the supervisor approves. Couldn't that address this, this problem? I suppose under your reading, the supervisor could approve it on the last day of trial. Right, or disapprove it. And then the taxpayer wouldn't know what they needed to present at trial because the taxpayer has the burden of proof in a tax court proceeding, and we need to know what we're supposed to be addressing before the trial. Well, I mean, wouldn't it be a defense, and I mean, this is all just hypothetical, but I mean, wouldn't it be a defense if the, so the taxpayer initiates the tax court proceeding, says, I don't owe these back taxes, and I certainly don't owe any penalties. Oh, and by the way, a supervisor has not approved these, and then it's up to the IRS to, you know, to show that, well, the, it may not be as a matter of shifting, but I mean, the IRS is going to have to show that you owe the back taxes, and you owe the penalties, and that they've, the supervisor approves. Yes, but one final thought is Congress intended to require supervisory approval to protect the taxpayer, not to protect the government. And if the, if the rule is other than what the tax court ruled in this case, then all of those people who get audited and don't know, and don't have the authority to do so, they're not going to benefit by what Congress intended. Okay. All right. Very well. Judge Branch, do you have any further questions? Thank you, Judge Newsom. No, I do not. Okay. Very well. Thank you both. That case is submitted.